UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

VS.                               CASE NO: 2:18-cr-182-FtM-29MRM

MAIKEL FUENTES-RODRIGUEZ

_____

**OPINION AND ORDER**

This matter comes before the Court on defendant's Motion to Suppress (Doc. #31) filed on January 4, 2019. The United States' Response in Opposition (Doc. #40) was filed on January 18, 2019. The Court held an evidentiary hearing on January 31, 2019. For the reasons set forth below, the Motion to Suppress is granted.

**I.  Arrest of Defendant and Protective Sweep Of Room**

**A. Factual Findings**

On and before July 24, 2018, officers of the Lee County Sheriff's Office Fugitive Warrants Unit had multiple active felony arrest warrants for defendant Maikel Fuentes-Rodriguez. These included a felony arrest warrant from Lee County, Florida charging fraudulent use of a credit card, Government's Exhibit 1e, and four arrest warrants for violations of probation, Government's Exhibit 1a-d. Officers in the Fugitive Warrants Unit had an address in Lehigh Acres and an address in Fort Myers, Florida for defendant. On July 24, 2018, the officers went to the Lehigh Acres address to

look for defendant, and were told he was not there. The officers "received information" that defendant was at 1955 Maravilla in Fort Myers, Florida. The information was not further described at the evidentiary hearing.

About six Fugitive Warrants Unit officers went to 1955 Maravilla, the location of the Merlis Beauty Salon, arriving between 8 a.m. and 8:30 a.m. The beauty shop was closed at the time. This location is a single story, block construction building which mostly houses the commercial beauty salon. There is a room in the back which can be accessed from a back door without going through the beauty salon. Access to this room is made by entering an exterior door depicted on the right in Defendant's Exhibit B, walking through a small utility area, and then turning right through an interior door into a windowless room which was estimated to be about eight feet by eight feet. See Defendant's Exhibits B, C, D, H, O. Defendant was residing in this room. The area around the exterior back door of the salon is not visible from anywhere in the room.

Upon arrival at the beauty salon, Detective Justin Gallant of the Fugitive Warrants Unit went to the front door, while the other officers went to the back door. The government failed to call any witness who had first-hand knowledge of the events at the back door. According to Detective Gallant, officers knocked on the back door depicted on the right in Defendant's Exhibit B. It

appears from the testimony of Detective Gallant that defendant opened the back door in response to the knock and was arrested without incident either in the threshold of that door or just outside that door. Deputy Gallant arrived at the back area within thirty seconds of hearing the arrest, and observed defendant in custody and handcuffed standing outside the back door. None of the officers entered into defendant's room during the arrest process.

While some officers were completing the arrest of defendant and verifying that the warrants were still active, Detective Gallant and "the rest of our unit" entered the salon building and then entered defendant's room to conduct a protective sweep. Detective Gallant testified that this was standard procedure, and the officers had no prior information or any contemporaneous evidence that anyone else was in the room.

The record was not developed at the evidentiary hearing about the conduct of any officer other than Detective Gallant during the protective sweep. Detective Gallant testified that the room was unlocked, but he could not remember if the door was closed. Detective Gallant entered the room and conducted a brief protective sweep to ensure there was no one inside the room who could pose a threat to the officers. Detective Gallant looked under the bed and unzipped a large enclosed clothing rack (depicted in Government's Exhibit 2j), the only two locations in the room which

were capable of hiding a person. No one was found, but Detective Gallant observed various items in plain view, including multiple gift or credit cards, two computers, a credit card reader/encoder, and a pill bottle. The only item Detective Gallant touched or moved was the zipper to open the clothing rack. Government's Exhibit 2j. The items Detective Gallant saw were later photographed by someone other than Detective Gallant. Government's Exhibits 2a-m.

The protective sweep took about thirty seconds, then Detective Gallant (and presumably the other officers) left the room, went outside, and informed his lieutenant what he had observed in the room. Detective Gallant did this because he believed there was probably illegal activity going on. Detective Gallant took his lieutenant back into the room and physically showed him what he had observed.

**B. Conclusions of Law**

The arrest of defendant did not violate the Fourth Amendment. Officers properly approached an exterior door, knocked, received an answer, and arrested defendant pursuant to state arrest warrants which were currently active. See Florida v. Jardines, 569 U.S. 1, 8 (2013); United States v. Maxi, 886 F.3d 1318, 1326-28 (11th Cir. 2018).

The initial entry into the room during or immediately after the arrest is not so simple. The government argues that the valid

arrest warrants authorized entry into defendant's room. (Doc. #40, pp. 9-11). The Eleventh Circuit has recently summarized the relevant legal principles:

> "'[F]or Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within.'" United States v. Bervaldi, 226 F.3d 1256, 1263 (11th Cir. 2000) (quoting Payton v. New York, 445 U.S. 573, 603, 100 S.Ct. 1371, 1388, 63 L.Ed.2d 639 (1980)). To enter a residence to execute an arrest warrant, a law enforcement officer must have a reasonable belief: (1) "that the location to be searched is the suspect's dwelling," and (2) "that the suspect is within the residence at the time of entry." United States v. Magluta, 44 F.3d 1530, 1535 (11th Cir. 1995); see also Bervaldi, 226 F.3d at 1263.
>
> In undertaking this two-part inquiry, we consider the totality of the circumstances known to the officer at the time the warrant is executed and are guided by "common sense factors." Bervaldi, 226 F.3d at 1263; Magluta, 44 F.3d at 1535. Officers may make reasonable inferences and presumptions based on the time of day or observations at the scene, and these presumptions can be rebutted only by evidence to the contrary. Magluta, 44 F.3d at 1535-36. Thus, it is reasonable, for example, to infer that a person is at home asleep at 7:30 a.m. or that a person is at home when his vehicle is parked outside or when he has a visitor. Id. at 1535, 1538.
>
> If officers have made such presumptions and have a reasonable belief that a suspect is present somewhere on the premises, they may search the entire premises of a residence, until the suspect is found. Maryland v. Buie, 494 U.S. 325, 332-33, 110 S.Ct. 1093, 1097, 108 L.Ed.2d 276 (1990). Moreover, if the

> initial entry into the suspect's residence is lawful, the officers are permitted to seize any contraband in plain view within the residence. <u>United States v. Smith</u>, 459 F.3d 1276, 1290 (11th Cir. 2006).

<u>United States v. Williams</u>, 871 F.3d 1197, 1201 (11th Cir. 2017). The reasonableness of the officers' beliefs is evaluated based on "the facts and circumstances within the knowledge of the law enforcement agents ... when viewed in totality." <u>United States v. Bennett</u>, 555 F.3d 962, 965 (11th Cir. 2009).

If a factual predicate had been established, these principles would cover most of the post-arrest police conduct in this case. The record, however, fails to establish a factual basis to support the application of these principles.

First, there was no evidence produced at the evidentiary hearing that the officers had a reasonable belief that the location to be searched was defendant's residence. Detective Gallant simply testified that on July 24, 2018, the officers were told defendant was at that address. Nothing in the record suggests that the officers had a belief, reasonable or otherwise, that this address or any part of it was defendant's residence at the time they went to the location.

Second, there was no evidence produced at the evidentiary hearing that the officers had a reasonable belief that defendant was within the residence at the time. All the record shows is that the officers were told by an unknown someone(s) that defendant

was "at" the address, but there are no facts and circumstances which suggest such information should be credited.

Third, and most importantly, there was no evidence produced at the evidentiary hearing that any officer actually entered the room defendant was using as his residence to make the arrest. Without an entry, this line of cases is simply irrelevant to the subsequent post-arrest entry into the room.

The government also justifies the entry into the room as a valid protective sweep. In Maryland v. Buie, 494 U.S. 325 (1990) the Court first rejected the position that "police should be permitted to conduct a protective sweep whenever they make an in-home arrest for a violent crime." Id. at 330. The Court then recognized two scenarios in which a protective sweep is justified:

> We also hold that as an incident to the arrest the officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched. Beyond that, however, we hold that there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene.

Buie, 494 U.S. at 334. If a protective sweep is authorized, its scope is limited:

> We should emphasize that such a protective sweep, aimed at protecting the arresting officers, if justified by the circumstances,

> is nevertheless not a full search of the premises, but may extend only to a cursory inspection of those spaces where a person may be found. The sweep lasts no longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises.

Buie, 494 U.S. at 335–36 (footnote omitted); see also Williams, 871 F.3d at 1202. In the course of a lawful protective sweep, officers are "free to seize any evidence they discovered in plain view within the proper scope of the protective sweep." United States v. Tobin, 923 F.2d 1506, 1513 (11th Cir. 1991) (en banc).

Here, the record establishes that defendant was either arrested outside the salon building, or in the threshold of the exterior back door to the salon building. This threshold is not the threshold to defendant's room, which was several feet beyond through a utility area. Defendant's Exhibits C, D, H. Thus, defendant's room was not a "space[] immediately adjoining the place of arrest from which an attack could be immediately launched." Buie, 494 U.S. at 334; see also United States v. Scott, 517 Fed. App'x 647, 649 (11th Cir. 2013) ("Given that Mr. Scott was arrested outside of his home, the officer's subsequent protective sweep of his home was not justified under Buie absent reasonable suspicion that there were dangerous individuals in the home."); United States v. Archibald, 589 F.3d 289, 298 (6th Cir. 2009) ("The protective sweep also did not occur within the area immediately adjoining the

place of arrest . . . . Here, the officers swept not just the room 'immediately adjoining' the doorway, i.e., the living room, but also the kitchen and upstairs bedroom."); United States v. Porter, 2018 WL 4214189, *11 (M.D. Ala. Aug. 9, 2018) (finding evidence should be suppressed because government failed to show the area of the search was 'immediately adjoining' place of defendant's arrest). Therefore, a protective sweep was only authorized if there were "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." Buie, 494 U.S. at 334.

It is undisputed that the officers had no such reasonable suspicion in this case. The officers had no prior information that another person was with defendant or in the room. The officers developed no evidence during their time at the location that another person existed. Given the physical layout of the beauty salon and the back room, no one in the room had a sight line which enabled them to see the back door area where the officers were arresting defendant. Additionally, the room had no windows from which a person could make any observations or pose any threat to the officers during the arrest process. Accordingly, the protective sweep in this case was unlawful under the Fourth Amendment.

As to the walk through by the Fugitive Warrants Unit lieutenant, there was no search warrant and therefore there is a presumption that it was unlawful. The government has not identified any exception to the warrant requirement which would justify this second entry and the observations made. Therefore, this entry and any observations made were also in violation of the Fourth Amendment.

The Court suppresses the observations made by Detective Gallant (and any other officers present) during the protective sweep and the observations made by the lieutenant during re-entry into the room immediately following the protective sweep. Murray v. United States, 487 U.S. 533, 536 (1988) ("The exclusionary rule prohibits introduction into evidence of ... testimony concerning knowledge acquired during an unlawful search.").

## II. Additional "Walk Through" By Detective

### A. Factual Findings

The Fugitive Warrants Unit lieutenant contacted the Economic Crimes Unit of the Sheriff's Office while officers watched the door and kept the room secure. Near 10:00 a.m. Detective Carmelo Bari arrived and interviewed Detective Gallant as to his observations in the room. Detective Bari instructed Detective Gallant to prepare a written statement, and Detective Gallant went to his police vehicle and prepared a short typed statement as to what he considered his pertinent activities and observations.

Before obtaining any search warrant, Detective Bari conducted a "walk through" of the room to further investigate and verify or confirm the location of the room and the location of the items seen by Detective Gallant in plain view. Detective Bari testified that given the different experiences of the fugitive warrants officers and his own experience, he wanted to make sure everything he was drafting in his search warrant affidavit was based on his personal knowledge. Detective Bari testified that he was the affiant on the search warrant affidavit, and that the information provided for the search warrant was based upon his own observations. His personal observations included Vanilla gift cards, items found inside an unzipped clothes rack, a large credit card reader and encoder sticking out of a bag, multiple electronic devices, and cell phones.

**B. Conclusions of Law**

For the reasons stated above, the original protective sweep and the lieutenant's walk-through were unlawful under the Fourth Amendment. The second walk-through by Detective Bari was also made without benefit of a search warrant, and is presumed to be unlawful. The government has identified no exception to the warrant requirement which would apply to this conduct. Accordingly, the Court finds that this second walk-through violated the Fourth Amendment, and any observations made by the detective are suppressed. Murray, 487 U.S. at 536.

### III. Search Warrant and Affidavit

#### A. Findings of Fact

On July 24, 2018, at 11:18 a.m. Detective Bari submitted an Affidavit (Doc. #31-1) for a search warrant from a state court judge by electronic transmission. The Affidavit stated that Detective Bari had probable cause to believe that Florida laws prohibiting the "Use of scanning device, skimming device, or re-encoder to defraud; possession of skimming device, controlled by 817.625(1d), of the Florida State Statutes" were being violated. Detective Bari also asserted he had probable cause to believe that property connected with these crimes was currently at the "Northwest room of the business Merlis Beauty Salon 1955 Maravilla Ave Fort Myers FL 33901." The Affidavit identified the property to be seized as:

> Laptop(s), Computer(s), Cellular Phone(s), Magnetic Card Reader(s), Magnetic Card Re-encoder(s), Magnetic Card Embosser(s), Gift Card(s), Credit/Debit Card(s), Hotel Room Key(s), Business Reward Card(s), charging cords, financial documents, personal documents, documents containing credit card numbers or personal identification information.

In the section of the Affidavit captioned "Probable Cause," Detective Bari stated:

> The Lee County Sheriff's Office Fugitive Warrants Unit responded to information on the location of a wanted person, Maikel Fuentes Rodriguez, white male, born June 4, 1982, was located at 1955 Maravilla Lane, Fort Myers, Florida, 33901. Upon a safety sweep, Detectives observed in the back room of the business, which contained a bed, clothes rack, and other personal effects. Also observed in plain view were: Fuentes Rodriguez prescription medication, multiple electronics, vanilla gift cards, and what appeared to be a credit card reader and encoder. Detectives ran Fuentes Rodriguez' personal identification, through N.C.I.C./F.C.I.C., which returned Fuentes had multiple outstanding warrants from various counties in Florida, to include a warrant in Lee County under case number 16CF000146, for FEL ORG FRAUDULENT USE OF A CREDIT CARD.
>
> Due to what the Detectives observed, they contacted the Lee County Sheriff's Office Economic Crimes Unit. Detectives Flint and Bari responded to the scene. While on scene Detective Flint spoke with the business owner, Merlis J. Lake, who advised Fuentes Rodriguez has been living in the rear room of the business for approximately three weeks.
>
> Due to Detective Bari's training and experience with cloned credit cards, counterfeit credit cards, stolen credit cards, and credit card making equipment, which is consistent with what Detectives observed in plain view. Detective Bari and Flint wishes to complete a thorough and detailed search of the business to reveal and obtain more evidence of the crimes Fuentes Rodriguez has committed.

As defendant correctly points out (Doc. #31, p. 2), the Affidavit did not state the date these events occurred.

On July 24, 2018, at 11:26 a.m. the state court judge authorized a Search Warrant of the Northwest room of the business Merlis Beauty Salon 1955 Maravilla Ave Fort Myers, Fl 33901[1] for the property sought in the Affidavit. The state judge found:

---

[1] The Motion to Dismiss asserts that "the search warrant was directed to the entire business premises," (Doc. #31, p. 1), but this is inaccurate. The Search Warrant states:

> That the Affiant has probable cause to believe and does believe that the property connected with the above listed crime(s) is currently being contained, stored or concealed within the following location:
>
> Northwest room of the business Merlis Beauty Salon 1955 Maravilla Ave Fort Myers FL 33901

> Based upon the affidavit, which is incorporated herein by reference, I am satisfied as to the existence of the facts as set forth herein, and finds that said facts do establish and constitute probable cause to believe that the above described property contains evidence connected to the commission of the above stated crime and does establish and constitute probable cause for the issuance of a search warrant.

(Doc. #31-1).

On July 24, 2018 at approximately 12 p.m. the LCSO deputies served the Search Warrant at Merlis Beauty Salon, seizing various items. The next day Detective Bari obtained a second search warrant to access the computers seized from the room pursuant to the first search warrant.

**B. Conclusions of Law**

Defendant raises the following grounds for suppression: (1) the Search Warrant was facially deficient because the absence of the date of the events in the Affidavit precludes a finding of probable cause (and no good faith analysis can salvage the Affidavit); (2) the Search Warrant was based on a prior invalid warrantless entry and search of the premises (which was not within the parameters of a legitimate protective sweep); and (3) observations made by the officers during the initial entry must be suppressed (and stricken from the Search Warrant Affidavit) because the entry was not a valid protective sweep. (Doc. #31, pp. 3-7.)

The information supporting the government's application for a search warrant must be timely because probable cause must exist at the time the warrant issues. United States v. Bervaldi, 226

F.3d 1256, 1264 (11th Cir. 2000). "[S]taleness is an issue that courts must decide by evaluating the facts of a particular case ...." United States v. Domme, 753 F.2d 950, 953 (11th Cir. 1985). Courts consider "the length of time" as well as "the nature of the suspected crime (discrete crimes or ongoing conspiracy), habits of the accused, character of the items sought, and nature and function of the premises to be searched." Bervaldi, 226 F.3d at 1265 (citation and internal quotation marks omitted). "There is no particular rule or time limit for when information becomes stale." Id.; see also United States v. Touset, 890 F.3d 1227, 1237–38 (11th Cir. 2018).

While there is no date set forth in the Affidavit as to when the event occurred, the Affidavit is not silent as to a time frame for the events. The Affidavit states that defendant has been residing in the back room for three weeks (Doc. #31-1, p. 10) and refers to property "currently" being at the salon. Given the nature of the suspected offense, if the Court were allowed to consider the facts set forth in the Affidavit, it would conclude the information was not stale and did provide probable cause.

But virtually all of the factual information set forth in the Affidavit which establishes the probable cause is the direct product of violations of defendant's Fourth Amendment rights. Without the initial protective sweep, and the two subsequent walk-throughs, there would be no information at all as to the contents

of defendant's room, and thus no probable cause. See <u>United States v. Parker</u>, 600 F. Supp. 2d 1251, 1261 (M.D. Fla. 2009) (suppressing evidence obtained as a result of a search warrant when probable cause for the warrant was based on prior illegal protective sweep); <u>see also</u> <u>United States v. Neth</u>, 2010 WL 1257695, *4 (M.D. Fla. Mar. 30, 2010) ("[W]here evidence is seized pursuant to a search warrant issued in reliance on information obtained during a prior illegal warrantless search, the good faith exception does not apply." (citing <u>United States v. McGough</u>, 412 F.3d 1232, 1236-40 (11th Cir. 2005)).

Accordingly, it is hereby

**ORDERED:**

Defendant's Motion to Suppress (Doc. #31) is **GRANTED.** All observations made by officers in defendant's room on July 24, 2018 are suppressed; all items seized pursuant to the Search Warrant of the same date are suppressed; and all items relating to the contents of the computers seized pursuant to a second search warrant are suppressed.

**DONE and ORDERED** at Fort Myers, Florida, this __5th__ day of February, 2019.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:

- 16 -

Counsel of Record